## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

THE BOARD OF REGENTS OF THE    *
UNIVERSITY SYSTEM OF GEORGIA    *
for and on behalf of THE MEDICAL    *
COLLEGE OF GEORGIA,    *
   *
      Plaintiff,    *    CIVIL ACTION
   *    FILE NO. _____
v.    *
   *
MEDICAL COLLEGE OF GEORGIA    *
FOUNDATION, INC.,    *
   *
      Defendant.    *

### NOTICE OF REMOVAL

TO:    The Judges of the United States District Court for the Southern
District of Georgia, Augusta Division

COMES NOW the Medical College of Georgia Foundation, Inc., (the "Foundation"), the Defendant herein, and pursuant to 28 U.S.C. § 1441 and 1446 submits this its Notice of Removal in the captioned action, and shows this Honorable Court as follows:

1.

Plaintiff Board of Regents of the University System of Georgia (the "Regents") has brought a civil action against the Foundation in the Superior

Court of Richmond County, Georgia, captioned <u>The Board of Regents of the</u> <u>University System of Georgia for and on behalf of the Medical College of</u> <u>Georgia v. Medical College of Georgia Foundation, Inc.</u>, Civil Action File No. 2009-RCCV-01364 (*Jolly*).  Plaintiff seeks, among other remedies, injunctive relief pursuant to the Lanham Act, specifically 15 U.S.C. §§ 114 and 1125.  A copy of the complaint and the exhibits thereto as well as the other papers filed with the complaint are filed herewith.

2.

Plaintiff's Complaint asserts causes of action over which this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and accordingly, is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441.

WHEREFORE the Foundation prays that this action be removed to the United States District Court and that no further proceedings be had in the Superior Court of Richmond County, Georgia.

[signatures next page]

Respectfully submitted this 30th day of October, 2009.


/s/_____
Patrick W. McKee                              Robert M. Brinson
GA Bar No. 494325                             GA Bar No. 082900

McKee & Mitchell                              Brinson, Askew, Berry, Seigler,
19 Spring Street                              Richardson & Davis LLP
Newnan, GA 30263                              P.O. Box 5007
770-683-8900 (phone)                          Rome, GA 30162-5390
770-683-8905 (facsimile)                      706-291-8853 (phone)
pwmckee@mckeelaw.com                          706-234-3574 (facsimile)
                                              bbrinson@brinson-askew.com


COUNSEL FOR DEFENDANT                          OF COUNSEL FOR
MEDICAL COLLEGE OF GEORGIA                     DEFEDANT MEDICAL
FOUNDATION, INC.                              COLLEGE OF GEORGIA
                                              FOUNDATION, INC.
                                              (subject to admission SDGa)

3

STATE OF GEORGIA

COUNTY OF COWETA

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this day served opposing counsel in the foregoing matter with a copy of the within and foregoing by serving a copy thereof by first class mail, with adequate postage affixed, addressed as follows:

Mary Jo Volkert
Assistant Attorney General
State Law Department
40 Capitol Square, SW
Atlanta, GA 30334

Patrick J. Rice
Special Assistant Attorney General
Hull, Towill, Norman, Barrett & Salley, PC
Post Office Box 1564
Augusta, GA 30903-1564

This 30th day of October, 2009.

By: /s/_____
Patrick W. McKee

McKee & Mitchell
19 Spring Street
Newnan, GA 30263
770-683-8900 phone
770-683-8905 fax

JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS
The Board of Regents of the University System of Georgia for and on behalf of the Medical College of Georgia

**DEFENDANTS**
Medical College of Georgia Foundation, Inc.

**(b)**   County of Residence of First Listed Plaintiff   Fulton
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Augusta
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)
Patrick J. Rice; Hull, Towill, Norman, Barrett & Salley; Suntrust Bank Building, 801 Broad Street, Seventh Floor, Augusta, GA 30901; 706-722-4481.

Attorneys (If Known)
Patrick W. McKee; McKee & Mitchell; 19 Spring Street, Newnan, GA 30263; 770-683-8900; Robert M. Brinson; Brinson Askew; P.O. Box 5007, Rome, GA 30162; 706-291-8853.

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question (U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☐ 1   Original Proceeding

☒ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from another district (specify)

☐ 6   Multidistrict Litigation

☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Lanham Act, 15 USC Sects. 1114 and 1125.
Brief description of cause:
Trademark infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE                                        DOCKET NUMBER

DATE
10/30/2009

SIGNATURE OF ATTORNEY OF RECORD
/s/ Patrick W. McKee, Counsel for Defendant, Petitioner for Removal

**FOR OFFICE USE ONLY**

RECEIPT #                  AMOUNT                  APPLYING IFP                  JUDGE                  MAG. JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**     Example:     U.S. Civil Statute: 47 USC 553
                                                                                                Brief Description: Unauthorized reception of cable service

VII.     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.     **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE SUPERIOR COURT OF RICHMOND COUNTY
STATE OF GEORGIA

09 OCT 20  AM 10: 33

CLE___ SUPERIOR. STATE
A___ ___LE COURT

___ H_SON. CLERK
___ COUNTY. GA.

| | |
|---|---|
| THE BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA for and on behalf of THE MEDICAL COLLEGE OF GEORGIA, | * * * * * |
| Plaintiff, | * |
| | * CIVIL ACTION NO. |
| | * |
| | * 2009 · RCCV · 01364 |
| v. | * |
| | * |
| MEDICAL COLLEGE OF GEORGIA FOUNDATION, INC., | * SHERYL B. JOLLY * |
| Defendant. | * * |

**VERIFIED COMPLAINT
FOR INTERLOCUTORY AND PERMANENT INJUNCTIVE RELIEF,
ATTORNEYS' FEES AND EXPENSES OF LITIGATION**

COMES NOW, the Board of Regents of the University System of Georgia ("Board of Regents," "Regents" or "Plaintiff"), for and on behalf of the Medical College of Georgia ("Medical College of Georgia," "Medical College" or "MCG"), and files this Complaint for Interlocutory and Permanent Injunctive Relief, Attorneys' Fees and Expenses of Litigation and respectfully shows this Honorable Court as follows:

Jurisdiction and Venue

1.

The Defendant Medical College of Georgia Foundation, Inc. ("Defendant") is a Georgia, non-profit corporation with its principal place of business and registered agent, James B. Osborne, at 1021 15th Street, Suite 6, Augusta, Georgia. Defendant has agreed to accept and acknowledge service by and through its counsel, Patrick W. McKee, 19 Spring Street, Newnan, GA 30263.

2.

The Defendant is subject to the jurisdiction of this Court.

3.

Venue is proper in this Court.

The Parties

4.

The Board of Regents of the University System of Georgia is a constitutional department in the executive branch of government of the State of Georgia, as set forth in 1983 Ga. Const. Art. VIII, Sec. IV, Par. I.  The Medical College of Georgia, founded in 1828, is an institution under the purview of the Board of Regents that offers academic programs in allied health sciences, dentistry, medicine, and nursing.

5.

The Defendant is a not-for-profit corporation organized and existing under the Georgia Non-Profit Corporation Code.  Its purpose, as provided in its  Amended and Restated Articles of Incorporation of , is to "serve the needs and interests of the Medical College of Georgia and benefit and promote the well being of the Medical College of Georgia, its administration, faculty, staff and student body."   A true and correct copy of said Amended and Restated Articles of Incorporation are attached hereto as Exhibit A.

6.

The Defendant was organized with the express permission of the Medical College of Georgia on or about October 15, 1954, for the sole and exclusive benefit of the Medical College and with an express or implied license or permission to use the Medical College of Georgia name.  The original Articles of Incorporation provided that the governing Board of Trustees would consist of five (5) members each of whom would be a graduate of the Medical College.

<u>Medical College of Georgia and MCG Names, Symbols and Marks</u>

7.

Plaintiff's registered marks include the following:

| | Name | Registration | Number |
|---|---|---|---|
| a) | Medical College of Georgia | Federal | 1,339,141 |
| b) | Medical College of Georgia Seal and Design 1828 | Federal | 1,703,425 |
| c) | Medical College of Georgia New Seal and Design | Federal | 3,282,904 |
| d) | MCG | Georgia | S-23424 |
| e) | MCG | Georgia | T-23425 |
| f) | MCG | South Carolina | N/A |
| g) | MCG | South Carolina | N/A |

8.

Plaintiff also owns the name and mark "Medical College of Georgia Foundation, Inc.," which has been used by Defendant since September 10, 2008, the date of Defendant's termination as a Board of Regents Cooperative Organization, without permission or license and after repeated requests of Plaintiff to cease using that name. Prior to that date, Defendant used that name and mark pursuant to express or implied permission or license from Plaintiff. As shown below, upon its termination as a Cooperative Organization, Defendant agreed in writing that it was "prohibited" from using the Medical College of Georgia name, marks and symbols.

9.

All of these registered and unregistered marks are used in interstate commerce.

10.

The Medical College of Georgia was founded in 1828 as the Medical Academy of Georgia. The name was changed to the Medical College of Georgia in 1833. The name was again changed in 1873 and there were other "official" names between then and 1950 but the name Medical College of Georgia also

3

was used informally over those years.  In January, 1950, the Medical College of Georgia became an autonomous institution within the University System of Georgia and has consistently had that name without interruption since 1950.

11.

The mark "Medical College of Georgia" was first registered by the Board of Regents in the U. S. Patent and Trademark Office in 1985.

12.

The mark and symbol "MCG" was federally registered with the U. S. Patent and Trademark Office by the Plaintiff in 1984.   This registration, through inadvertence, was not renewed, but Plaintiff has continued to use same as a common law trademark and as a registered Georgia trademark.  Said marks have been used continuously by the Medical College of Georgia and have never been abandoned.

13.

"MCG" has been registered by the Plaintiff under both Georgia's and South Carolina's trademark laws.

14.

On or about January 22, 2009, Plaintiff provided Defendant written notice that Defendant's use of the name and marks of the Plaintiff was creating confusion among many members of the public and demanded that Defendant cease using the name, initials, symbols, marks and other intellectual property of the Board of Regents, including but not limited to "Medical College of Georgia" and "MCG," effective immediately.  The Plaintiff specifically noted that "[a]ny express or implied license to the contrary is withdrawn."  A copy of said letter is attached hereto as Exhibit B and made a part hereof.

4

15.

By letter dated February 17, 2009, attached hereto as Exhibit C, the Foundation responded to

Exhibit B, and stated:

> ". . . please be assured that the Foundation is taking the necessary steps to
>
> adopt a new corporate name that will not create confusion among the public
>
> regarding our non-affiliation with the Board of Regents and/or the Medical
>
> College of Georgia . . . .   However, until such name change is completed,
>
> future communications from the Foundation will contain a written
>
> disclaimer. . . ."

16.

The Board of Regents and the Medical College of Georgia, on several other occasions, have

requested that Defendant cease using the Medical College of Georgia and MCG names, symbols and

marks.  An example is attached hereto as Exhibit D, a letter from Plaintiff's counsel dated February 26,

2009, to which the Defendant responded by letter dated March 6, 2009, attached hereto as Exhibit E,

stating:

> With regard to our timetable for ceasing the use of the Board of Regents'
>
> name and marks, our  Chairman's statement in his letter to Mr. J. Burns
>
> Newsome dated February 17, 2009, is still applicable.  We are still in the
>
> process of consulting with professional advisers to come up with a new
>
> corporate name upon which our Board members will agree, and we cannot
>
> give you any timeframe for completing the change at present.  Once the
>
> name is changed, the new name will replace the old name on the marks used
>
> by MCG Foundation.  In the meantime, the requested disclaimer will appear

on all written communication and will suffice to prevent confusion by the

general public as to our official status as a non-affiliate of MCG and/or the

Board of Regents.

17.

In June, 2009, Defendant actually changed its name as shown by Exhibit F attached hereto and

made a part hereof.  In July, 2009, however, Defendant inexplicably changed its name back to Medical

College of Georgia Foundation, Inc. as is shown by Exhibit G attached hereto and made a part hereof.

18.

Defendant continues to use the names, symbols and marks of Plaintiff, including without

limitation, Medical College of Georgia Foundation and MCG, as of the date of filing this Complaint.

Defendant's Governing Documents

Articles of Incorporation

19.

The Defendant's Articles of Incorporation (Exhibit A), in Article Three, state that it is organized

and operated for purposes that:

> most effectively will serve the needs and interests of the Medical College of
>
> Georgia and benefit and promote the well-being of the Medical College of
>
> Georgia, its administration, faculty, staff and student body . . . .

20.

Article Three of Defendant's Articles of Incorporation further provides, in part, that:

> It is not the purpose of the corporation to supplant or supersede the Board of
>
> Regents of the University System of Georgia ("Board of Regents"), nor in
>
> any way to pre-empt the functions of the Board of Regents in fulfilling its

6

the corporation shall be used, _inter alia_, to supplement and enhance actions

taken by the Board of Regents in support of the Medical College of Georgia.

Bylaws

21.

Article Two, Section 2.2 of Defendant's bylaws, attached as Exhibit H, similarly provides that:

The purposes of the corporation shall be to serve the needs and interest of

the Medical College of Georgia and to benefit and promote the well-being of

the Medical College of Georgia, its administration, faculty, staff and student

body, and the people and communities served by the Medical College of

Georgia; and to acquire, lease, receive and accept property to be

administered exclusively for charitable purposes, primarily for the benefit of

the Medical College of Georgia, including for such purposes:

  a. Administering for charitable purposes property donated to the

     corporation;

  b. Distributing property for such purposes in accordance with the

     terms of gifts, bequests or devises . . . .

  c. Distributing property to and for the benefit of the Medical College

     of Georgia.

(emphases added).

22.

Section 2.3 of Defendant's bylaws states:

> It is not the purpose of the corporation to supplant or supersede the Board of Regents of the University System of Georgia ("Board of Regents"), nor in any way to preempt the functions of the Board of Regents in fulfilling its responsibilities to the Medical College of Georgia.  Rather, the resources of the corporation shall be used, inter alia, to supplement and enhance actions taken by the Board of Regents to support of the Medical College of Georgia.

23.

Section 4.1(f) of the Defendant's bylaws provides, in pertinent part, that:

> Under no circumstances shall any actions be taken inconsistent with the articles of incorporation and these bylaws; and the fundamental and basic purposes of the corporation, as expressed in the articles of incorporation and these bylaws, shall not be amended or changed.

24.

Section 10.4 of the Defendant's bylaws further provides, in part, that:

> The Board of Directors shall gather and analyze facts and conduct such investigation and research as necessary or desirable to determine the most effective agencies and means for meeting the needs of the Medical College of Georgia, its administration, faculty, staff and student body . . . .

Cooperative Organization Agreement

25.

On or about June 26, 2005, Plaintiff and Defendant entered into a written contract entitled "Board of Regents of the University System of Georgia Cooperative Organization Guiding Principle Memorandum of Agreement" (the "Cooperative Organization Agreement"), which is attached hereto as Exhibit I. Exhibits to the Cooperative Organization Agreement include: (i) the University System of Georgia Board of Regents' Policy 1905 – Cooperative Organizations (Exhibit A to the Cooperative Organization Agreement); (ii) the University System of Georgia Guiding Principles for Cooperative Organizations (Exhibit B to the Cooperative Organization Agreement).

26.

Pursuant to the terms and provisions of the first and fourth "Whereas" clauses of the Cooperative Organization Agreement, Defendant agreed:

> The purpose of this Memorandum of Understanding is to guide and direct the parties respective their affiliation, cooperation and working relationship, inclusive of anticipated future arrangements and agreements in furtherance thereof.
>
> . . .
>
> The Cooperative Organization (*Defendant*) was created for the express purpose of serving the interests of the Institution in carrying out its programs, activities and services and is authorized by the Institution to engage in activities, programs and services including soliciting gifts, donations and grants for the purpose of supporting and enhancing Institution programs and the Cooperative Organization shall not engage in activities,

9

programs and services that are in conflict with or inconsistent with the

policies, mission and goals of the Board of Regents, the Institution or the

cooperative organization.

(parenthetical added for explanation).

27.

Sections 1, 6, 7 and 8 of the Cooperative Organization Agreement provide as follows:

Section 1.  The Cooperative Organization agrees to abide by the existing

Board of Regents policy section 1905 and the University System of Georgia

Guiding Principles for Cooperative Organizations, which are attached hereto

as Exhibits A and B and incorporated herein.

• • •

Section 6.  The Cooperative Organization shall be entitled to use the name,

symbols and trademarks of the Institution during the term of this Agreement.

Upon termination of this Agreement, The Cooperative Organization shall be

prohibited from using the name, symbols or trademarks of the Institution.

(emphasis added).

Section 7.  The Cooperative Organization shall clearly and conspicuously

disclose that funds or other items of value donated are to be provided to the

Cooperative Organization as distinct from the Institution and shall establish

a procedure to ensure that funds and other items of value donated to the

Institution are properly deposited in Institution accounts or transferred

properly.

• • •

10

<u>Section 8</u>.  This agreement has a term of five (5) years.  It may be terminated

by either party upon 90 days written notice.  If terminated, paragraph 11 of

the Guiding Principles shall survive such termination.  This agreement may

be amended by mutual consent from time to time at the request of either

party.  All amendments must be in writing and executed by the parties.  The

Cooperative Organization agrees to and shall transfer requested records to

the Institution and assist, as needed with any transition requirements, in the

event the MOU if [is] terminated.

(parenthetical added to clarify misspelled word).

<u>Addendum To Cooperative Organization Agreement</u>

28.

By Addendum executed by Defendant on or about June 26, 2005, Exhibit J hereto, the Cooperative

Organization Agreement was amended in several particulars, including the addition of a sentence to

original section 9 stating that, upon the termination of the Agreement between the parties, Defendant may

continue to engage in activities permitted by its governing documents but that Defendant cannot use MCG

names, symbols or trademarks.  Specifically, Section 7 of the Addendum provided explicitly:

Following termination, the cooperative organization may continue

to engage in activities that are permitted by law and its governance

documents that do not require an association with the Institution <u>or</u>

<u>the use of the name, symbols or trademarks of the Institution</u>

(Medical College of Georgia).

(Emphases added and parenthetical definition of Institution added).

11

Guiding Principles Document

29.

The Guiding Principles for Cooperative Organizations, attached as Exhibit B to the Cooperative

Organization Agreement (Exhibit I hereto), provide that the mission and priorities of Defendant have to be

closely aligned with the mission and priorities of MCG as established by MCG's President and that its

financial transactions be transparent to MCG.

30.

These Guiding Principles also provided in Section 10 thereof:

> Since the Board of Regents owns the intellectual property of the institution,
>
> all usage by the Cooperative Organization of the institution's name,
>
> symbols, or trademarks is subject to approval by the Board of Regents.

The Affiliation Agreement

31.

On or about April 29, 2006, MCG and Defendant entered into an "Affiliation Agreement" the

purpose of which was "to further define the relationship between the parties." A copy is attached hereto as

Exhibit K. The Affiliation Agreement recited that the Medical College had the responsibility "to raise

private funds and is situated to coordinate and manage a development program through the College's

Division of Institutional Relations," and that "the Foundation is situated to receive, manage, invest and

disburse private funds for the exclusive benefit and support of the Medical College." Additionally, the

Affiliation Agreement provided that "the Foundation's President and CEO and  Foundation Board of

Directors shall support the College's fundraising efforts as requested by the College and as resources

permit. . . ." (Affiliation Agreement; "Whereas" clauses 6, 7 and 10; emphases added).

12

32.

As evidenced by the foregoing, the Defendant's purpose was and is to receive, administer, manage and disburse private donations, gifts and bequests intended for the exclusive use, benefit and support of the Medical College of Georgia.

33.

The Defendant's purpose is not to independently conduct fundraising activities and it may not conduct fundraising activities that fail to support or enhance the Medical College or that are inconsistent or in conflict with the goals of the Board of Regents or the Medical College of Georgia.  Its activities may only supplement, support and enhance the activities of the Board of Regents or the Medical College of Georgia.

34.

The Affiliation Agreement further included, in section 4-8, the promise "[t]o provide the college, through the President of the College, the Vice-President of University Advancement . . . with unrestricted access to donor records . . . ."

35.

Section 5.10 of the Affiliation Agreement states that "<u>[t]he President of the college shall reserve the authority to approve use of the MCG name, symbol and trademark</u>." (emphasis added).

Other Foundation Documents

36.

A recent public relations document, drafted, prepared and distributed by Defendant itself, attached hereto as Exhibit L, describes its role as follows:

> **_Why does the Foundation exist?_**
>
> The Foundation's primary purposes are to <u>receive</u> <u>and</u> <u>administer</u> <u>private</u> <u>gift</u> <u>assets</u> of the Medical College of Georgia and MCG Health, Inc., including investment management of temporary and permanent assets. In addition, the Foundation maintains permanent records on all its donors. By virtue of being a tax-exempt organization, gifts to the MCG Foundation are tax deductible as provided by law under Section 170 of the Internal Revenue Code.
>
> **_Who is in charge of fundraising, alumni affairs, public relations and government affairs?_**
>
> <u>The Office of the Vice President for University Advancement (now</u> <u>Development) at MCG is responsible for all gift solicitation and alumni</u> <u>programs.  The Office of the Vice President for External Affairs (now</u> <u>Strategic Support) at MCG is responsible for public relations</u> and government programs.  Their offices are located that the Alumni Center, FI-1000, Augusta, GA 30912-7730.

(underlining and parenthetical clarification added).

37.

The Foundation's June 30, 2005, Statement of Purpose, attached hereto as Exhibit M, provides:

> The Medical College of Georgia Foundation, Inc. was established in 1954
>
> to encourage, receive, and manage gifts for the benefit of the Medical
>
> College of Georgia.

(underlining added).

Termination of Relationship

38.

Despite the unambiguous requirements of it Articles of Incorporation, its Bylaws, the Cooperative Organization Agreement and the Affiliation Agreement and other Foundation documents, the Defendant consistently failed to act in the best interests of MCG as required in those documents, and as determined by the Board of Regents and the MCG President; failed to observe its fiduciary responsibilities to the Medical College; failed to observe its obligations as a Cooperative Organization; failed to observe the determinations of the Board of Regents as to activities not in the best interests of the Medical College; failed to cease using the Medical College of Georgia marks, symbols and name as part of its name; failed to integrate its activities, fundraising efforts and priorities with those of MCG; failed to provide MCG with unrestricted access to donor records; failed to develop standards to ensure that no conflict of interest occurs between its representatives and employees and MCG; failed to support MCG and its President; and failed to support MCG in a cooperative and collaborative manner.

39.

On or about June 12, 2008, after exhausting all reasonable efforts to reconcile differences with Defendant, the Board of Regents terminated its Cooperative Organization Agreement with Defendant after concluding that it was not acting as a Cooperative Organization or observing the Cooperative Organization

policy of the Board or Regents or the "Principles" which guide the activities of a Cooperative

Organization.  A copy of the termination document is attached as Exhibit N.

40.

Termination was made in conformity with, and observance of, the termination provisions of the

Cooperative Organization Agreement.

41.

Following the termination, Plaintiff, acting through the Medical College of Georgia, created a new

foundation, the Georgia Health Sciences University Foundation, Inc. ("GHSU Foundation" or "GHSUF"),

which has executed the Board of Regents' standard Memorandum of Understanding for Cooperative

Organizations.  This new foundation is the officially designated and recognized fundraising arm of the

Medical College of Georgia and today is its only authorized, fundraising Cooperative Organization or

affiliated organization.  Georgia Health Sciences University Foundation solicits donations and gifts on

behalf of MCG and is authorized to use all MCG names, symbols and marks, registered and unregistered,

in those efforts.

42.

Though Defendant is no longer a "Cooperative Organization," it is conducting fundraising

activities and is soliciting donations and gifts without first determining the actual fundraising priorities of

the Medical College and without any coordination or approval of the Board of Regents or the Medical

College of Georgia. It also is improperly using, in connection therewith, the Medical College of Georgia

and MCG names, symbols and marks and, thereby, consistently, continually and unlawfully infringing

upon same.

43.

Since the termination of the Cooperative Organization Agreement, Defendant's fundraising efforts have been and are currently competing against the Medical College of Georgia and the Medical College of Georgia's institutionally-aligned Georgia Health Sciences University Foundation by unlawfully using Medical College of Georgia and MCG names, symbols and marks and by conducting fundraising campaigns for priorities not aligned with MCG's priorities. Such unauthorized and unlawful activities are causing Plaintiff irreparable injury in direct violation of contractual agreements, applicable law and Defendant's own governing documents.

44.

On more than one occasion, Plaintiff has requested that Defendant cease using the Medical College of Georgia and MCG names, symbols and marks. Defendant continues to use those names, marks and symbols as of the date of the filing of this Complaint. Though Defendant has acknowledged its obligation to cease using the Medical College of Georgia and MCG names, symbols and marks and promised to do so, it has continued to use those names, symbols and marks for more than a year since the Cooperative Organization Agreement was terminated.

45.

Since the termination of the Cooperative Organization Agreement, Defendant's use of the Medical College of Georgia and MCG names, symbols and marks in its fundraising and other activities has created actual confusion among the public and past, present and potential donors.

46.

Since the termination of the Cooperative Organization Agreement, Defendant's active solicitation of potential donors using the Medical College of Georgia and MCG names, symbols and marks and its

conflicting fundraising activities have injured the Medical College of Georgia's fundraising efforts for its priorities and is causing irreparable, ongoing injury for which Plaintiff has no adequate remedy at law.

<u>Accreditation</u>

47.

The Medical College of Georgia is a member of the Southern Association of Colleges and Schools ("Southern Association").  As such, it must follow the Standards and Requirements of the Commission on Colleges of the Southern Association, the accrediting entity for colleges and universities, including the Medical College of Georgia, in this section of the United States.

48.

These accrediting Standards and Requirements require the Medical College of Georgia to have a clearly defined, formal agreement setting forth its legal authority and operating control in relation to the Defendant and any liability associated with that relationship.

49.

Plaintiff has requested that the Defendant enter into such a formal agreement setting forth the legal relationship, as specified and required by the Southern Association, between the parties.

50.

To this point in time, Defendant has refused to enter into an agreement satisfying the requirements of the Southern Association guidelines and policies.

51.

As a result, the accreditation of Plaintiff has been placed in jeopardy and at risk.  Plaintiff would be severely injured and damaged if its accreditation were in any way compromised or withdrawn as a result of Defendant's action.

# COUNT I

## BREACH OF CONTRACTS

52.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 51 of this Complaint as if set forth verbatim herein.

53.

Defendant is engaged in fundraising and soliciting gifts from third persons. Defendant's activities wrongly, unlawfully, and without approval use Medical College of Georgia and MCG names, symbols and marks, and a seal with the mark "Medical College of Georgia."

54.

Defendant directly competes against the Medical College of Georgia and the Medical College of Georgia's institutionally-aligned, fundraising Georgia Health Sciences University Foundation, which has been created as a cooperative organization under Plaintiff's policy 1905. This policy authorizes the creation of entities, known as Cooperative Organizations, for the purpose of soliciting gifts from third persons on behalf of institutions that are part of The Board of Regents of the University System of Georgia.

55.

Defendant's recent solicitation initiating a fundraising endeavor entitled "The 2009-10 F.A.C.T.S. Campaign" was initiated by a letter and solicitation materials, a portion of which are attached hereto as Exhibit L. These solicitation materials unlawfully use the names and marks Medical College of Georgia Foundation, MCG Foundation, the initials MCGF and a seal using the Medical College of Georgia Foundation. Only the front and back covers of the accompanying brochure are attached to Exhibit L but brochure is replete with unauthorized uses of the Medical College of Georgia and MCG names and marks.

Also attached as part of Exhibit L is a copy of the front of the envelope to be returned to the Defendant. This campaign was not discussed or coordinated with Plaintiff and it's purpose is not a priority of the Medical College of Georgia.  In fact, the cover letter makes it clear that this campaign competes with those of the Medical College's Georgia Health Sciences University Foundation.  Such directly competitive campaigns are not in the best interests of the Medical College of Georgia.

56.

Such use and similar uses of the Medical College of Georgia and MCG names, symbols and marks by Defendant is now causing, and is likely to continue to cause, confusion among the public and, particularly, among the public interested in financially supporting the endeavors, activities and mission of the Medical College of Georgia and its authorized foundation, GHSUF.

57.

Although the Medical College of Georgia is a state institution, it receives less than twenty-five percent of its revenues from the State of Georgia.  The Medical College of Georgia, therefore, is dependent upon contributions and gifts from the public in achieving its essential mission in this State.  The confusion caused by Defendant's use of the Medical College of Georgia and MCG names, symbols and marks causes irreparable damages to Plaintiff and Plaintiff has no adequate remedy at law.

58.

Defendant's use of the Medical College of Georgia and MCG names, symbols and marks is confusing, and is likely to continue to confuse, the public into believing that Defendant's foundation is approved by, sponsored by or affiliated with Plaintiff.  Such use will continue to trade upon the good will and public acceptance developed by Plaintiff over many years at great expense, thereby lessening the value of Plaintiff's good will to Plaintiff's detriment and disadvantage.

59.

Contrary to and in breach of the agreed upon terms of the Cooperative Organization Agreement, the Addendum thereto, the Board of Regents Policy 1905 for Cooperative Organizations, the Guiding Principles for Cooperative Organizations and the Affiliation Agreement, appropriate portions of which are cited above, Defendant has continued to use the name, symbols and marks of the Board of Regents and the Medical  College of Georgia and to thereby represent itself to the public and donor communities as an authorized representative, affiliate, or associate of the Medical College of Georgia, or that it is otherwise using the Medical College of Georgia and MCG names, symbols and marks with the approval of Plaintiff.

60.

Contrary to and in breach of the agreed upon terms of the referenced agreements, Defendant has continued to use trade names, trademarks and symbols owned by the Plaintiff in violation of those contractual agreements between the parties and of the Plaintiff's registered and protected intellectual property rights.

61.

Contrary to and in breach of the agreed-upon terms of the referenced agreements, Defendant has been and is currently actively soliciting donations using the Board of Regents' Medical College of Georgia and MCG names, symbols and marks in all of its fundraising activities.

62.

Defendant, specifically, has violated the terms of the Cooperative Organization Agreement by engaging in activities that are inconsistent with the policies of the Plaintiff and by failing and refusing to cease use of the identified names, symbols and marks of the Medical College of Georgia and the Board of Regents in a timely manner.

63.

Defendant has breached Section 5.10 of the Affiliation Agreement by its continuing use of the Medical College of Georgia and MCG names, symbols and marks without the approval of the President of the Medical College of Georgia.

64.

Defendant also has breached the Guiding Principles Agreement by using the Medical College of Georgia and MCG names, symbols and marks without the approval of the Medical College of Georgia or the Board of Regents.

65.

Additionally, Section 8 of the Cooperative Organization Agreement requires Defendant to "transfer requested records to the Institution and assist, as needed, with any transition requirements, in the event of the Cooperative Organization Agreement is terminated."

66.

Contrary to and in breach of the terms of the Cooperative Organization Agreement and since the termination thereof, Defendant has refused to transfer, to deliver or share, in a timely manner, records as requested by the Medical College of Georgia.  Many of these records are essential to Plaintiff's budgeting and planning requirements.

67.

Defendant also has breached Section 4.8 of the Affiliation Agreement by refusing to provide the President of the Medical College of Georgia with "unrestricted access to donor records."

68.

All of these breaches, and others, are causing Plaintiff irreparable damage for which Plaintiff has no adequate remedy at law.  Plaintiff is entitled to injunctive relief.

22

## COUNT II

## BREACH OF FIDUCIARY DUTY

69.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraph 1 through 68 of this Complaint as if set forth verbatim herein.

70.

As shown by the nature and purpose of Defendant as a non-profit corporation established solely for the benefit of the Medical College of Georgia and as shown by the actual relationship between the Medical College and the Defendant, a fiduciary relationship exists between the two entities.

71.

Defendant has breached this fiduciary relationship by:

(a)     failing to act in the best interests of the Medical College;

(b)     establishing and conducting fundraising efforts independently of the Medical College;

(c)     failing to coordinate its fundraising efforts with the fundraising priorities of the Medical College that directly compete with the Medical College of Georgia's fundraising activities and, thereby, failing to act in the best interest of the Medical College of Georgia;

(d)     conducting fundraising activities without the approval of the Medical College or the Board of Regents;

(e)     conducting its fundraising activities on behalf of and in the name of the Medical College of Georgia without the approval of the Medical College; and

(f)     establishing its own criteria for what is in the best interests of the Medical College in regard to

      i.     fundraising;

      ii.    use and application of so-called unrestricted funds;

      iii.   deciding independently of the Medical College and the Board of Regents what will benefit and promote the well-being of the Medical College of Georgia, its administration, faculty, staff and student body;

      iv.   using its resources in disregard of its duty "to supplement and enhance actions taken by the Board of Regents in support of the Medical College of Georgia" as required by its Articles of Incorporation;

      v.    failing to limit its activities to administering donations for the use of the Medical College and distributing same according to priorities and needs of the Medical College as determined by the Plaintiff and the Medical College;

      vi.   failing to serve the Medical College in carrying out, supporting and enhancing its programs, activities and services;

      vii.   competing, conflicting and acting inconsistently with the policies, missions and goals of the Board of Regents and the Medical College;

      viii.  failing to support the College's fundraising efforts as requested by the College and as its resources permit; and

      ix.   failing to furnish the President of the Medical College with unrestricted access to donor records.

(g)    failing to act in the best interests of the Medical College by creating and/or fostering a climate of hostility, conflict and lack of cooperation between MCG and the Foundation.

(h)    using the marks, names and symbols of the Medical College of Georgia without license or permission in violation of its contractual obligations and in violation of state and federal law.

(i)     refusing to change its name as it contractually agreed to do.

(j)     failing to cooperate with Plaintiff in entering into an appropriate agreement with Plaintiff concerning Defendant's true legal relationship with the Medical College for accreditation purposes.

72.

Plaintiff has been and continues to be irreparably injured by these activities and has no adequate remedy at law therefor.

73.

Plaintiff is entitled to interlocutory and permanent injunctive relief prohibiting Defendant from conducting fundraising activities in the name, and for the benefit, of the Medical College of Georgia; prohibiting Defendant from refusing to follow the fundraising priorities of the Medical College of Georgia; and requiring Defendant to act in the best interests of the Medical College by serving the Medical College's, not the Defendant's, needs and well-being.

74.

Plaintiff, alternatively, is entitled to interlocutory and permanent injunctive relief prohibiting Defendant from conducting fundraising activities on behalf of the Medical College of Georgia without first obtaining the approval of the Plaintiff or MCG and coordinating those activities with the fundraising activities and priorities of MCG and its Georgia Health Sciences University Foundation in a manner satisfactory to Plaintiff or MCG.

75.

Plaintiff, also, is entitled to interlocutory and permanent injunctive relief prohibiting Defendant from using Plaintiff's name, marks and symbols in any manner and, specifically, the marks Medical College of Georgia Foundation and MCG or MCG Foundation.

76.

Additionally, Plaintiff is entitled to interlocutory and permanent injunctive relief prohibiting Defendant from breaching its fiduciary duties as described above.  Such relief would in no way affect Defendant's fiduciary duty to past donors as to properly investing, administering and applying past and future contributions for specific purposes and endowments.

## COUNT III

## DEFENDANT'S FUNDRAISING ACTIVITIES

77.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 76 of this Complaint as if set forth verbatim herein.

78.

Defendant's independent fundraising activities in the name of, and for the benefit of, the Medical College of Georgia are not authorized by Plaintiff.

79.

Defendant's independent fundraising activities conflict with and interfere with and compete with the separate fundraising activities of the Medical College of Georgia and its fundraising foundation, Georgia Health Sciences University Foundation, Inc.

80.

Defendant's fundraising activities violate its Articles of Incorporation, Bylaws and corporate purposes and are causing irreparable injuries to Plaintiff for which Plaintiff has no adequate remedy at law.

81.

Plaintiff is entitled to injunctive relief prohibiting Defendant from using Plaintiff's or MCG's name, marks and symbols in its fundraising activities and to injunctive relief prohibiting Defendant from conducting any fundraising activities whatsoever that are not in the best interests of the Medical College because they are not aligned with the actual fundraising priorities of the Medical College and do not promote its well-being.  Alternatively, Defendant should be enjoined from fundraising activities on behalf of the Medical College which have not been first approved by the Plaintiff or in consultation with the President of the Medical College of Georgia as being in support of and in cooperation with the priorities and the best interests of the Medical College as determined by the Plaintiff and the Medical College of Georgia.

## COUNT IV

### VIOLATION OF GEORGIA'S TRADEMARK STATUTE, O.C.G.A. § 10-1-440 THROUGH § 493

82.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 81 of this Complaint as if set forth verbatim herein.

83.

The Defendant has been and is currently using, without the consent of Plaintiff, reproductions and/or copies of the Plaintiff's marks, which are registered under Georgia's trademark statute.  Such unlawful use has caused and is likely to cause confusion or mistake or to deceive as to the source of origin of the services.  Moreover, such use is causing actual confusion or mistake as to the source of origin of the services.  These actions are in violation of O.C.G.A. § 10-1-450.

84.

The Defendant commits said acts with knowledge that the marks are registered and that it does not have the consent, permission or license of the Plaintiff to use same. The Defendant's intent is to cause confusion or mistake or to deceive.

85.

The Defendant's use of Plaintiff's registered marks has been and continues to be willful, intentional and purposeful, in violation of Plaintiff's rights.

86.

As a direct and proximate result of the Defendant's infringement of Plaintiff's exclusive rights under state trademark law, Plaintiff, under O.C.G.A. § 10-1-451, is entitled to injunctive relief to enjoin Defendant from the use of the same or any similar mark because there exists a likelihood of injury to Plaintiff's business reputation and dilution of the distinctive quality of its marks, whether or not there is or has been competition between the parties or confusion as to the source of goods or services.

87.

Plaintiff also is entitled to an order mandating the destruction of all such trademarks or service marks and all goods, articles, or other items bearing its marks, which are in the possession or control of Defendant.

88.

Further, Plaintiff is entitled to recover its attorneys' fees, costs and expenses of litigation pursuant to Georgia law because Defendant has intentionally infringed Plaintiff's intellectual property, has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense.

## COUNT V

## GEORGIA ANTI-DILUTION STATUTE

89.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 88 of this Complaint as if set forth verbatim herein.

90.

The unauthorized use of Plaintiff's names, symbols and marks has caused, and will continue to cause, a likelihood of dilution to the distinctive quality of these names, symbols and marks and confusion of the source of Defendant's services.

91.

Such wrongful use violates the Georgia Anti-Dilution Statute, O.C.G.A. § 10-1-151(b), and entitles Plaintiff to injunctive relief as a matter of law.

## COUNT VI

## VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT, O.C.G.A. § 10-1-370 THROUGH § 382

92.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 91 of this Complaint as if set forth verbatim herein.

93.

The Defendant has been and is currently engaging in deceptive trade practices by passing itself off as an organization affiliated with the Plaintiff.

94.

Defendant is passing off its services as those of Plaintiff and is causing confusion and misunderstanding as to the source, sponsorship and approval of its services as well as its affiliation, connection or association with Plaintiff in violation of the Georgia Uniform Deceptive Trade Practices Act. O.C.G.A. §10-1-370 through 375. Plaintiff is being irreparably injured by Defendant's actions, is without an adequate remedy at law and is entitled to injunctive relief.

## COUNT VII

## GEORGIA'S  CHARITABLE SOLICITATIONS ACT OF 1988

95.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 94 of this Complaint as if set forth verbatim herein.

96.

Georgia's Charitable Solicitations Act of 1988 ("Act"), O.C.G.A. § 43-17-1 through 23, prohibits a charity from soliciting donations in Georgia until it has registered with and been approved by the Secretary of State.

97.

A charitable organization that is "operated, supervised or controlled in connection with a nonprofit educational institution" is exempt from the registration requirements of the Act.

98.

Since the termination of the Cooperative Organization Agreement, Defendant is not "operated, supervised or controlled in connection with a nonprofit educational institution."

99.

Therefore, Defendant is required to register under the Act.

100.

The Defendant has not registered with the Secretary of State as required under the Act and has been and is currently soliciting donations unlawfully and in violation of the Act.

101.

The Defendant is also in violation of Georgia's Charitable Solicitations Act of 1988 by continuing to use Plaintiff's marks, trade names and symbols.  Such use confuses and misleads the public and solicited persons.

102.

The Defendant is in further violation of Georgia's Charitable Solicitations Act of 1988 by continuing to use Plaintiff's marks, trade names and symbols. Such use constitutes a misrepresentation and, thereby, confuses and misleads the public and solicited persons.

103.

The Defendant is also in violation of Georgia's Charitable Solicitations Act of 1988 by continuing to use Plaintiff's marks and trade names, which thereby has lead, and will lead, solicited persons to believe that Plaintiff sponsors, endorses, or approves such solicitation when Plaintiff has not given consent to the use of its names or marks for these purposes.

104.

Plaintiff is being irreparably damaged by Defendant's acts and has no adequate remedy at law. Therefore, Plaintiff is entitled to interlocutory and permanent injunctive relief, general damages, exemplary damages and attorneys' fees.

## COUNT VIII

## VIOLATION OF 15 U.S.C. § 1114

105.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 104 of this Complaint as if fully set forth herein.

106.

Plaintiff is entitled to temporary and permanent injunctive relief prohibiting Defendant from using its Medical College of Georgia registered mark.

107.

Defendant, without the consent of the Plaintiff, knowingly and intentionally is using, in interstate commerce, Plaintiff's federally-registered Medical College of Georgia mark in connection with its advertising, promotions and fund solicitation efforts.  Such use is causing actual confusion, mistakes and deception, which is likely to continue into the indefinite future, in violation of 15 U.S.C. § 1114(1)(a).

108.

Defendant also has reproduced, copied and used Plaintiff's registered mark on printing, packaging and advertisements and other marketing materials in interstate commerce in connection with the distribution and advertising of Defendant's services in violation of 15 U.S.C. § 1114(1)(b).

109.

Such unauthorized, knowing and intentional uses of Plaintiff's registered mark in violation of 15 U.S.C. § 1114 entitles Plaintiff to immediate interlocutory and permanent injunctive relief plus attorneys' fees and expenses of litigation.

## COUNT IX

## VIOLATION OF 15 U.S.C. § 1125

110.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 109 of this Complaint as if fully set forth herein.

111.

Defendant's use in interstate commerce of the federally registered Medical College of Georgia mark in the name "Medical College of Georgia Foundation, Inc." in connection with Defendant's services, is a direct infringement upon Plaintiff's registered mark and is in direct violation of Plaintiff's rights under 15 U.S.C. § 1125(a)(1) in that it:

(a)     has caused, is causing and will cause confusion, mistakes and deception, which are likely to continue, as to the affiliation, connection, or association of Defendant with Plaintiff and its services;

(b)     has caused, is causing and will cause confusion, mistakes and deception, which are likely to continue, as to the source of origin, sponsorship or approval of Defendant's services;

(c)     has misrepresented, is misrepresenting and will misrepresent the nature, characteristics and qualities of Defendant's services and commercial activities; and

(d)     has constituted, constitutes and will constitute a false or misleading description or representation of fact.

## COUNT X

## UNFAIR COMPETITION

### 112.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 111 of this Complaint as if fully set forth herein.

### 113.

Defendant's actions constitute unfair competition under federal and Georgia law.

### 114.

Unless restrained by this Court, Defendant's continuing acts of unfair competition will forever and irreparably damage Plaintiff.  Plaintiff, therefore, is entitled to interlocutory and permanent injunctive relief under federal and state law.

### 115.

Defendant's actions constituting unfair competition are intentional and continuing and constitute bad faith, stubborn litigiousness and are causing Plaintiff unnecessary trouble and expense.  Plaintiff, therefore, is entitled to reasonable attorneys' fees and expenses of litigation.

## COUNT XI

## DILUTION OF FAMOUS MARK UNDER 15 U.S.C. § 1125(c)

### 116.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 115 of this Complaint as if fully set forth herein.

### 117.

Defendant's acts constitute actual dilution of Plaintiff's famous mark, Medical College of Georgia, and its distinctive quality.

118.

This mark is a famous mark under the provisions of 15 U.S.C. § 1125(c) in that it is inherently distinctive or has obtained acquired distinctions.

119.

Defendant's use of this famous mark is a willful attempt to trade on Plaintiff's famous mark for which Plaintiff is entitled to interlocutory and permanent injunctive relief, attorneys' fees, expenses of litigation and to the destruction of all infringing articles in the possession of Defendant under the provisions of 15 U.S.C. § 1125(c)(1), 15 U.S.C.§§ 1116, 1117 and 1118.

## COUNT XII

### DILUTION BY BLURRING AND TARNISHING UNDER 15 U.S.C. § 1125

120.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 119 of this Complaint as if fully set forth herein.

121.

Plaintiff's Medical College of Georgia mark is a famous mark under 15 U.S.C. § 1125

122.

Defendant's use of this famous mark constitutes, at the very least, dilution by blurring or dilution by tarnishing, in violation of 15 U.S.C. § 1125(c)(1) and (2).

123.

Plaintiff, therefore, is entitled to interlocutory and permanent injunctive relief regardless of the presence or absence of actual or likely confusion, competition or economic injury under 15 U.S.C. § 1125(c)(1).

## COUNT XIII

## ACCREDITATION

124.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 123 of this Complaint as if set forth verbatim herein.

125.

Defendant purports to be an independent corporate foundation established to serve the needs and interests of the Medical College of Georgia and to benefit and promote the well-being of the Medical College of Georgia.

126.

Defendant has failed and refused to serve the needs and best interests of the Medical College of Georgia and to promote its well-being by refusing to cooperate with it in observing the Standards and Requirements of the Commission on Colleges of the Southern Association of Colleges and Schools and by refusing to enter into an appropriate formal, written agreement as to the Medical College of Georgia's legal authority in relation to the Defendant.

127.

As a result, Defendant has placed the continued accreditation of the Medical College of Georgia at risk for being denied.

128.

Such a failure on Defendant's part constitutes a breach of Defendant's fiduciary duty to the Medical College of Georgia.

129.

Plaintiff, therefore, is entitled to interlocutory and permanent injunctive relief requiring Defendant to cooperate with the Medical College in observing such accreditation requirements or to cease all fundraising activities on behalf of the Medical College of Georgia.

## COUNT XIV

## INTERLOCUTORY AND PERMANENT INJUNCTION

130.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 129 of this Complaint as if set forth verbatim herein.

131.

Plaintiff seeks interlocutory and permanent injunctions enjoining Defendant from any and all use of Plaintiff's registered trademarks Medical College of Georgia and MCG and from using said marks to actively compete against the Medical College of Georgia and the Medical College of Georgia's institutionally-aligned, fundraising Georgia Health Sciences University Foundation, thereby creating confusion among the public and potential donors.

132.

The Defendant's actions since the termination of the Cooperative Organization Agreement have demonstrated an on-going disregard for Plaintiff's rights and have created conditions that have caused or are reasonably likely to cause immediate and irreparable injury for which Plaintiff has no adequate remedy at law.

133.

Plaintiff requests the Court consolidate Plaintiff's requests for interlocutory injunction with a trial on the merits.

## COUNT XV

### ATTORNEYS' FEES AND EXPENSES

134.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 133 of this Complaint as if set forth verbatim herein.

135.

Plaintiff is entitled to recover its attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1125(c) because Defendant has intentionally violated and infringed upon Plaintiff's marks and rights.

136.

Plaintiff, also, is entitled to recover its attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11 and § 10-1-373(b)(2) because Defendant as acted in bad faith, has been stubbornly litigious, and has caused the plaintiff unnecessary trouble and expense and because Defendant has knowingly, intentionally and with reckless disregard breached the contracts specified in Count IV above.

## COUNT XVI

### DESTRUCTION OF INFRINGING MATERIALS

137.

Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 136 of this Complaint as if set forth verbatim herein.

138.

Plaintiff is entitled to the destruction of all labels, signs, stationery, packages, printed forms and documents, advertisements, seals, symbols, brochures, solicitations, and all other items and documents containing Plaintiff's marks "MCG" and "Medical College of Georgia"; these items shall include, without limitation, all documents and items containing the name "Medical College of Georgia Foundation, Inc." or "The Medical Foundation of Georgia, Inc."

139.

Such destruction is authorized by federal and Georgia law and without limitation, specifically by 15 U.S.C. § 1118 and O.C.G.A. §§ 10-1-451 and 10-1-454.

WHEREFORE, having filed its Complaint against Defendant, Plaintiff prays as follows:

(a)     that summons and process issue to Defendant as provided by law;

(b)      that Defendant appear and answer this Complaint;

(c)     that a combined preliminary and permanent injunction hearing be ordered by the Court;

(d)     that, upon hearing, preliminary and permanent injunctions be issued enjoining Defendant, its agents, servants, employees, and attorneys, and any other persons or entities in active concert or participation with them, from continuing the acts complained of herein and, more particularly, that Defendant and such other persons or entities be preliminarily and permanently enjoined and restrained from:

               i.     using or employing, directly or indirectly, in any manner the designation "Medical College of Georgia," "MCG," and "Medical College of Georgia Foundation, Inc.," or any colorable imitation thereof, in Defendant's names, symbols, seals, stationery, solicitations, brochures, publications, advertisements, or other identifying documents;

ii.  using the name, words, or symbols "Medical College of Georgia," "MCG," or the "Medical College of Georgia Foundation, Inc.," or any colorable imitation thereof in Defendant's corporate name or any trade names or the like;

iii.  using a name, symbol or mark design or other designator on which "Medical College of Georgia," "MCG," "Medical College Foundation of Georgia, Inc.," or a colorable imitation of either is displayed or presented in such a manner as to be likely to cause confusion, to cause mistake, or to deceive or to dilute the distinctive quality of any of the Medical College of Georgia and MCG names, symbols or marks;

iv.  falsely representing or causing confusion in any manner such that the public would tend to falsely associate Defendant's services as being the same as, related to, approved by, sponsored by, or affiliated with Plaintiff;

v.  competing, unfairly, with Plaintiff in the matters complained of herein, passing off Defendant's services as sponsored by Plaintiff, or falsely suggesting, describing, representing, advertising, or designating the origin of Defendant's services or otherwise engaging in unfair competition or deceptive trade practices; and

vi.  all fundraising activities for the Medical College of Georgia whatsoever or, in the alternative, all fundraising activities for the Medical College of Georgia that are not first authorized by the Board or the Medical College of Georgia for the exclusive benefit of the Medical College of Georgia and its fundraising priorities and best interests as determined by the Medical College of Georgia or the Board of Regents.

vii.    requiring Defendant to always act in the best interests of the Medical College of Georgia in serving the actual needs of and well-being of the Medical College as determined by the Plaintiff and the Medical College.

viii.   prohibiting Defendant from failing to abide by its Articles of Incorporation and Bylaws by not acting in the best interests of the Medical College of Georgia as required by those documents.

(e)    that, upon hearing, a preliminary and permanent injunction be issued requiring Defendant to enter into a formal agreement with Plaintiff satisfying the accreditation standards of the Southern Association as to Plaintiff's legal authority, control and the relationship between the parties;

(f)    that Defendant be directed to file with this Court and serve on Plaintiff within thirty (30) days after the service of the injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

(g)    that Defendant be required to deliver up for destruction all labels, products, packaging materials, or promotional literature, advertisements, promotion aids, and other material in Defendant's possession or control using the names, words, symbols or marks "Medical College of Georgia" or "MCG," and "Medical College of Georgia Foundation, Inc.," or any colorable imitations thereof, as well as all other means for reproducing any of Plaintiff's proprietary designations; and

(h)    that the Court award Plaintiff the costs of this action and reasonable attorneys' fees, expenses of litigation and costs; and

(i)    that Plaintiff have such other and further relief, general and special, at law or in equity, to which it may show itself justly entitled.

*(signatures begin on next page)*

41

Respectfully submitted, this 20th day of October, 2009.

THURBERT E. BAKER                 033887
Attorney General

R. O. LERER                                446962
Deputy Attorney General

DENISE E. WHITING-PACK        558559
Senior Assistant Attorney General

MARY JO VOLKERT                    728755
Assistant Attorney General

PATRICK J. RICE                          603000
Special Assistant Attorney General

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

MARY JO VOLKERT
Assistant Attorney General
State Law Department
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 656-3343
Fax: (404) 657-3239

PATRICK J. RICE
Special Assistant Attorney General
HULL, TOWILL, NORMAN, BARRETT & SALLEY, PC
Post Office Box 1564
Augusta, Georgia 30903-1564
(706) 722-4481
Fax: (706) 849-5126

## VERIFICATION

PERSONALLY APPEARED before the undersigned officer duly authorized to administer oaths, **J. Burns Newsome**, Vice Chancellor for Legal Affairs of the Board of Regents of the University System of Georgia, who after being duly sworn on oath deposes and says that he is an officer of the State of Georgia, and that the facts contained in the Verified Complaint are true and correct to the best of his knowledge and belief.

This _15_ day of October, 2009.

Sworn to and subscribed to before me
This _15th_ day of October, 2009.

NOTARY PUBLIC

SEAL

My con KENNETH P. BARRAS   4-8-11
        NOTARY PUBLIC
        SPALDING COUNTY
        STATE OF GEORGIA
MY COMMISSION EXPIRES April 8, 2011

IN THE SUPERIOR COURT OF RICHMOND COUNTY
STATE OF GEORGIA

THE BOARD OF REGENTS OF THE   *
UNIVERSITY SYSTEM OF GEORGIA for and   *
on behalf of THE MEDICAL COLLEGE OF   *
GEORGIA,   *
    *
   Plaintiff,   *
    *
    *
v.   *
    *
    *
MEDICAL COLLEGE OF GEORGIA   *
FOUNDATION, INC.   *
    *
   Defendant.   *

CIVIL ACTION NO.

2009 - RCCV - 01364 J

## PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANT

COMES NOW Plaintiff in the above-styled civil action, and, serve upon Defendant the following Interrogatories and requires Defendant to answer said Interrogatories separately and fully in writing, under oath, and within forty-five (45) days after service of said Interrogatories upon Defendant as provided by law.

You are under a duty pursuant to O.C.G.A. § 9-11-26(e) seasonally to supplement your interrogatory responses with respect to any question directly addressed to: (a) the identity and location of persons having knowledge of discoverable matters; and (b) the identity of each person expected to be called as an expert witness at trial, as well as the subject matter on which they are expected to testify and the substance of their testimony.

You are under a duty to seasonably amend your interrogatory responses if you obtain information on the basis of which: (a) you know that the interrogatory response was incorrect when made; or (b) you know that the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

In answering the following Interrogatories, you are requested to give full and complete answers based upon your personal knowledge as well as that of any agents, employees, investigators, attorneys, or other parties who may have obtained information on your behalf.

A request to identify an individual means to state the name, title or job description, home and business addresses, and home and business telephone numbers of such individual. A request to identify a document means to state a description of the document, e.g., a letter, report, invoice, account book, etc., the author of the document, the date of the document, if any, and the name or names of the individual or individuals having control, custody, or possession of such document.

If you object to answering any of the following Interrogatories on the basis of the "work product" doctrine defined in O.C.G.A. Section 9-11-26(b), or on the basis of a claim of privilege, please state the following: identify the person or persons possessing the information requested, identify the subject matter of the information involved, and the specific grounds for your claim that such information is not discoverable.

1.      Please explain under what right or authority the Defendant continues to use the name "Medical College of Georgia" and "MCG" in its name, i.e., Medical College of Georgia Foundation, Inc. and MCG Foundation.

2.      Does the Defendant contend it has no obligation to observe Section 6 of the Cooperative Organization Agreement of June 26, 2005?

3.      If your response to Interrogatory 2 above is "yes," what is the basis for that contention?

4.      Does the Defendant contend it has no obligation to observe Section 9 of the Addendum to the Cooperative Organization Agreement dated June 26, 2005?

5.     If your response to Interrogatory 4 above is "yes," what is the basis for that contention?

6.     Does the Defendant contend it has no obligation to observe Section 7 of the Cooperative Organization Agreement dated June 26, 2005?

7.     If your response to Interrogatory 6 above is "yes," what is the basis for that contention?

8.     Does the Defendant contend it has no obligation to observe Section 10 of the Guiding Principles for Cooperative Organizations?

9.     If your response to Interrogatory 8 above is "yes," what is the basis for that contention?

10.    Does the Defendant contend it has no obligation to observe Section 5.10 of the Affiliation Agreement of April 29, 2006?

11.    If your response to Interrogatory 10 above is "yes," what is the basis for that contention?

12.    Does the Defendant acknowledge that it owes fiduciary duties to Plaintiff and, specifically, the Medical College of Georgia?  If not, please explain why.

13.    Do those duties include not competing against the Medical College of Georgia in its fundraising activities?  If the answer is no, please explain why.

14.    Is competing against the Medical College of Georgia in the best interests of the Medical College as required by Defendant's Articles of Incorporation?  If so, please explain why.

15.    Did the Defendant consult with the Medical College or its President or any of its representatives prior to initiating Defendant's 2009-10 F.A.C.T.S. campaign?  If so, please state when, where and with whom the consultation occurred.

16.    Do you agree that the Defendant's use of the names "Medical College of Georgia Foundation" and "MCG Foundation" following Defendant's termination as a cooperative organization has caused confusion?

17.     Do you agree that the competing fund drives or solicitations for contributions by Defendant and the Georgia Health Sciences University Foundation has caused confusion among certain donors and potential donors?

18.     If the Defendant claims to have acquired the right to use the Medical College of Georgia name and/or mark for use after September 10, 2008, please provide the name of the person or entity providing that right and please fully identify all documents or writings supporting that contention.

19.     If Defendant is aware of any instance, occasion, conversation, communication or document, including any notes of Defendant, after June 12, 2008 until the date of answering these interrogatories, suggesting, inferring or stating that the services of Defendant were confusing in regard to the source, origin, sponsorship or relationship with the Georgia Health Sciences University Foundation or with the Medical College of Georgia, please identify same by means of communication, person or entity involved, date, written, oral or otherwise and general description of the subject matter.  Please produce all writings evidencing same in response to Plaintiff's Request for Production of Documents to Defendant.

THURBERT E. BAKER          033887
Attorney General

R. O. LERER                446962
Deputy Attorney General

DENISE E. WHITING-PACK     558559
Senior Assistant Attorney General

MARY JO VOLKERT            728755
Assistant Attorney General

PATRICK J. RICE            603000
Special Assistant Attorney General

4

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

MARY JO VOLKERT
Assistant Attorney General
State Law Department
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 656-3343
Fax: (404) 657-3239

PATRICK J. RICE
Special Assistant Attorney General
HULL, TOWILL, NORMAN, BARRETT & SALLEY, PC
Post Office Box 1564
Augusta, Georgia 30903-1564
(706) 722-4481
Fax:  (706) 849-5126

IN THE SUPERIOR COURT OF RICHMOND COUNTY
STATE OF GEORGIA

CLERK OF SUPERIOR, STAT
AND JUVENILE COURT
FILED IN OFFICE

09 OCT 20  AM 10: 34

ELAINE JOHNSON, CLERK
RICHMOND COUNTY, GA.

THE BOARD OF REGENTS OF THE          *
UNIVERSITY SYSTEM OF GEORGIA for and *
on behalf of THE MEDICAL COLLEGE OF  *
GEORGIA,                             *
                                     *
          Plaintiff,                 *          CIVIL ACTION NO.
                                     *
                                     *          2009-RCCV-01364J
                                     *
v.                                   *
                                     *
MEDICAL COLLEGE OF GEORGIA           *
FOUNDATION, INC.                     *
                                     *
          Defendant.                 *

## NOTICE OF DEPOSITION OF WILLIAM E. MAYHER, III, M.D.

Please take notice that on Friday, December 11, 2009, at 10:00 a.m., the undersigned will proceed

to take the deposition of **William E. Mayher, III, M.D.**, at Hull, Towill, Norman, Barrett & Salley, P.C.,

801 Broad Street, Suite 700, Augusta, Georgia  30901; upon oral examination, before an agent authorized

by law to take depositions.  Said deposition will be taken for discovery and all other purposes authorized

by the Georgia Civil Practice Act.

|                                    |        |
|------------------------------------|--------|
| THURBERT E. BAKER                  | 033887 |
| Attorney General                   |        |
| R. O. LERER                        | 446962 |
| Deputy Attorney General            |        |
|                                    |        |
| DENISE E. WHITING-PACK             | 558559 |
| Senior Assistant Attorney General  |        |
|                                    |        |
| MARY JO VOLKERT                     | 728755 |
| Assistant Attorney General         |        |

PATRICK J. RICE                                    603000
Special Assistant Attorney General

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

MARY JO VOLKERT
Assistant Attorney General
State Law Department
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 656-3343
Fax: (404) 657-3239

PATRICK J. RICE
Special Assistant Attorney General
HULL, TOWILL, NORMAN, BARRETT & SALLEY, PC
Post Office Box 1564
Augusta, Georgia 30903-1564
(706) 722-4481
Fax:  (706) 849-5126

IN THE SUPERIOR COURT OF RICHMOND COUNTY
STATE OF GEORGIA

09 OCT 20  AM 10: 34

CLERK SUPERIOR. STATE
AND COUNTY. GA.

| | | |
|---|---|---|
| THE BOARD OF REGENTS OF THE<br>UNIVERSITY SYSTEM OF GEORGIA for and<br>on behalf of THE MEDICAL COLLEGE OF<br>GEORGIA, | * <br> * <br> * <br> * <br> * | |
| Plaintiff, | * <br> * <br> * | CIVIL ACTION NO. <br><br> 2009- RCCV- 01364 J |
| v. | * <br> * <br> * | |
| MEDICAL COLLEGE OF GEORGIA<br>FOUNDATION, INC. | * <br> * <br> * | |
| Defendant. | * | |

### NOTICE OF DEPOSITION OF JAMES B. OSBORNE, SR., Ed.D.

Please take notice that on Friday, December 11, 2009, at 1:00 p.m., the undersigned will proceed to

take the deposition of **James B. Osborne, Sr., Ed.D.**, at Hull, Towill, Norman, Barrett & Salley, P.C., 801

Broad Street, Suite 700, Augusta, Georgia 30901; upon oral examination, before an agent authorized by

law to take depositions. Said deposition will be taken for discovery and all other purposes authorized by

the Georgia Civil Practice Act.

| | |
|---|---|
| THURBERT E. BAKER<br>Attorney General | 033887 |
| R. O. LERER<br>Deputy Attorney General | 446962 |
| DENISE E. WHITING-PACK<br>Senior Assistant Attorney General | 558559 |
| MARY JO VOLKERT<br>Assistant Attorney General | 728755 |

PATRICK J. RICE                     603000
Special Assistant Attorney General

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

MARY JO VOLKERT
Assistant Attorney General
State Law Department
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 656-3343
Fax: (404) 657-3239

PATRICK J. RICE
Special Assistant Attorney General
HULL, TOWILL, NORMAN, BARRETT & SALLEY, PC
Post Office Box 1564
Augusta, Georgia 30903-1564
(706) 722-4481
Fax:  (706) 849-5126

IN THE SUPERIOR COURT OF RICHMOND COUNTY
STATE OF GEORGIA

09 OCT 20  AM 10: 34

CL... ... JPERIOR. STAT...
.... .... ....LE COURT
F...... ...

...... ...ISON, CLERK
...... COUNTY, GA.

| | | |
|---|---|---|
| THE BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA for and on behalf of THE MEDICAL COLLEGE OF GEORGIA, | * * * * * | |
| Plaintiff, | * * | CIVIL ACTION NO. |
| | * | 2009-RCCV-01364 J |
| v. | * * | |
| MEDICAL COLLEGE OF GEORGIA FOUNDATION, INC. | * * * | |
| Defendant. | * | |

## NOTICE OF DEPOSITION OF LLOYD B. SCHNUCK, JR., M.D.

Please take notice that on Friday, December 11, 2009, at 3:00 p.m., the undersigned will proceed to take the deposition of **Lloyd B. Schnuck, Jr., M.D.,** at Hull, Towill, Norman, Barrett & Salley, P.C., 801 Broad Street, Suite 700, Augusta, Georgia 30901; upon oral examination, before an agent authorized by law to take depositions. Said deposition will be taken for discovery and all other purposes authorized by the Georgia Civil Practice Act.

| | |
|---|---|
| THURBERT E. BAKER<br>Attorney General | 033887 |
| R. O. LERER<br>Deputy Attorney General | 446962 |
| DENISE E. WHITING-PACK<br>Senior Assistant Attorney General | 558559 |
| MARY JO VOLKERT<br>Assistant Attorney General | 728755 |

PATRICK J. RICE                    603000
Special Assistant Attorney General

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

MARY JO VOLKERT
Assistant Attorney General
State Law Department
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 656-3343
Fax: (404) 657-3239

PATRICK J. RICE
Special Assistant Attorney General
HULL, TOWILL, NORMAN, BARRETT & SALLEY, PC
Post Office Box 1564
Augusta, Georgia 30903-1564
(706) 722-4481
Fax:  (706) 849-5126

IN THE SUPERIOR COURT OF RICHMOND COUNTY
STATE OF GEORGIA

CLERK  SUPERIOR, STATE
A
FI

09 OCT 20  AM 10: 33

NSON, CLERK
RICHMOND COUNTY, GA.

| | |
|---|---|
| THE BOARD OF REGENTS OF THE<br>UNIVERSITY SYSTEM OF GEORGIA for and<br>on behalf of THE MEDICAL COLLEGE OF<br>GEORGIA,<br><br>     Plaintiff,<br><br><br>v.<br><br>MEDICAL COLLEGE OF GEORGIA<br>FOUNDATION, INC.<br><br>     Defendant. | \*<br>\*<br>\*<br>\*<br>\*<br>\*     CIVIL ACTION NO.<br>\*<br>\*<br>\*     _____<br>\*<br>\*<br>\*<br>\*<br>\* |

## PLAINTIFF'S FIRST REQUEST
## FOR ADMISSIONS TO DEFENDANT

COMES NOW The Board of Regents of the University System of Georgia for and on behalf of

The Medical College of Georgia, Plaintiff in the above-styled case, and, pursuant to O.C.G.A. § 9-11-36,

serves this Request for Admissions to Defendant Medical College of Georgia Foundation, Inc., and hereby

requests Defendant, within forty-five (45) days of service of this request, to separately make the following

admissions for the purpose of this action only and subject to all pertinent objections to admissibility which

may be interposed at trial.

Answers should specifically admit or deny set forth in detail and the reasons why Defendant

cannot truthfully admit or deny the matter.  A denial shall fairly meet the substance of the requested

admission, and when good faith requires that Defendant qualify an answer or deny only in part the matter

of which an admission is requested, Defendant shall specify so much of it as is true and qualify or deny the

remainder.  Defendant may not give lack of information or knowledge as a reason for failure to admit or

deny unless Defendant states that it has made reasonable inquiry and that the information known or readily obtainable is insufficient to enable it to admit or deny the request.

Defendant is advised that if it fails to admit the truth of any matter as requested and if Plaintiff thereafter proves the truth of the matter, Plaintiff will apply to the Court for an Order requiring Defendant to pay the reasonable expenses incurred in making that proof, including reasonable attorneys' fees.

1.     Defendant has no license to use the Medical College of Georgia or MCG names and marks.

2.     Defendant has no other contractual right or written permission to use the Medical College of Georgia or MCG names and marks.

3.     Through the Cooperative Organization Agreement signed by the Defendant and dated June 26, 2005, the Defendant agreed that it could use the name, symbol and trademarks of the Medical College of Georgia "during the term of this Agreement" and "upon termination of this Agreement it shall be prohibited from using the name, symbols or trademarks" of the Medical College of Georgia.

4.     Defendant has chosen to disregard the provision identified in Request 3 above prohibiting the use of the name, symbols or trademarks of the Medical College of Georgia.

5.     Pursuant to the terms of Section 8 of the Cooperative Organization Agreement, the Defendant agreed "to and shall transfer requested records to the (Medical College of Georgia) and assist, as needed with any transition requirements, in the event the M.O.U. if [is] terminated." (Parenthetical substituted for the word "Institution" for clarity and bracketed "is" added to clarify typographical error.)

6.     In the addendum of June 26, 2005, to the Cooperative Organization Agreement, the Defendant agreed in Section 7 as follows:

> Following termination, the cooperative organization may continue
> to engage in activities that are permitted by law and its governance
> documents that do not require an association with the Institution or

<u>the use of the name, symbols or trademarks of the Institution.</u>

(Medical College of Georgia).

(Emphases added and parenthetical definition of Institution added).

7.      Defendant has chosen not to observe the provision identified in Request 6 above concerning the use of the names, symbols or trademarks of Plaintiff.

8.      The Guiding Principles of Cooperative Organizations, made a part of the Cooperative Organization Agreement, provided in Section 10 as follows:

> Since the Board of Regents owns the intellectual property of the
> institution, all usage by the Cooperative Organization of the
> institution's name, symbols, or trademarks is subject to approval by
> the Board of Regents.

9.      Defendant has chosen not to observe the provision identified in Request 8 above concerning the use of the names, symbols or trademarks of Plaintiff.

10.      Pursuant to the Affiliation Agreement of April 29, 2006, the Defendant agreed "the Foundation's President and CEO and Foundation Board of Directors shall support the College's fundraising efforts <u>as requested by the College</u> and as resources permit. . . ." (Affiliation Agreement; "Whereas" clause 10; emphases added).

11.      The Affiliation further provided, in section4-8, the promise "[t]o provide the college, through the President of the College, the Vice-President of University Advancement . . . with unrestricted access to donor records. . . ."

12.      The Affiliation Agreement also provided the Medical College of Georgia had the responsibility "to raise private funds and is situated to coordinate and manage a development program through the College's Division of Institutional Relations," and that "the Foundation is situated to <u>receive,</u>

manage, invest and disburse private funds for the exclusive benefit and support of the Medical College."
(Affiliation Agreement; "Whereas" clauses 6 and 7; emphases added).

13.     Since June, 2008, Defendant has begun to plan and conduct fundraising activities without consulting or obtaining the approval of the Plaintiff, the Medical College of Georgia, or the President of the Medical College of Georgia.

14.     The Foundation is conducting its 2009-10 F.A.C.T.S. Campaign without consulting with, or obtaining the approval of, the Plaintiff, the Medical College of Georgia or its President.

15.     The Defendant is aware, and has been aware, of the trademarks identified in paragraph 7 of Plaintiff's Complaint.

16.     The Defendant changed its name in June, 2009, as alleged in paragraph 17 of Plaintiff's Complaint.

17.     In July, 2009, the Defendant changed its name back to Medical College of Georgia Foundation, Inc.

18.     Defendant continues to use the words "Medical College of Georgia" in its name and its documents and activities.

19.     Defendant continues to use MCG Foundation in its documents and activities.

20.     Defendant is infringing upon Plaintiff's Medical College of Georgia and MCG marks.

21.     Defendant has no legal right to  use the words or marks Medical College of Georgia or MCG in its name.

22.     Defendant has fiduciary responsibilities to Plaintiff.

23.     Defendant is required to act in the best interests of Plaintiff.

24.     Defendant is required, under its Articles of Incorporation, to supplement and enhance actions taken by the Board of Regents in support of the Medical College of Georgia.

THURBERT E. BAKER                       033887
Attorney General

R. O. LERER                             446962
Deputy Attorney General

DENISE E. WHITING-PACK                  558559
Senior Assistant Attorney General

MARY JO VOLKERT                         728755
Assistant Attorney General


PATRICK J. RICE                         603000
Special Assistant Attorney General

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

MARY JO VOLKERT
Assistant Attorney General
State Law Department
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 656-3343
Fax: (404) 657-3239

PATRICK J. RICE
Special Assistant Attorney General
HULL, TOWILL, NORMAN, BARRETT & SALLEY, PC
Post Office Box 1564
Augusta, Georgia 30903-1564
(706) 722-4481
Fax:  (706) 849-5126

IN THE SUPERIOR COURT OF RICHMOND COUNTY
STATE OF GEORGIA

09 OCT 20  AM 10: 33

CLE___ SUPERIOR, STATE

_____ N. CLERK
RICH____ COUNTY, GA.

| | | |
|---|---|---|
| THE BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA for and on behalf of THE MEDICAL COLLEGE OF GEORGIA, | * * * * * | |
| Plaintiff, | * * | CIVIL ACTION NO. |
| v. | * * * | 2009 - RCCV- 01364 J |
| MEDICAL COLLEGE OF GEORGIA FOUNDATION, INC. | * * * | |
| Defendant. | * | |

## PLAINTIFF'S FIRST REQUEST
## FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

COMES NOW Plaintiff in the above-styled civil action, and, pursuant to O.C.G.A. § 9-11-34, requests Defendant to produce for inspection and copying at the offices of Hull, Towill, Norman, Barrett & Salley, Post Office Box 1564, Augusta, Georgia 30903-1564, the following documents within forty-five (45) days of the date of service of this Request:

1. If any of the following documents attached to the Complaint are not current or accurate, please produce a current, accurate and complete copy of Defendant's

    a. Amended and Restated Articles of Incorporation and all amendments, restatements or revisions thereof subsequent to Exhibit A.

    b. The Foundation's Bylaws and all amendments, restatements or revisions subsequent to Exhibit F. attached to the Complaint.

2. A true and correct copy of all general correspondence, advertisements, solicitations, information, brochures, reports, fundraising requests sent to Defendant's usual mailing lists since June 1, 2008.

3.   A copy of any donor specific solicitations with names and addresses and other donor information redacted.   A "donor specific solicitation" is a mass mailing sent out to named individuals.   One copy of each such solicitation is all that is requested unless such differed in presentation and language.

4.   A true and correct copy of any donor solicitation directed to individual prospective donors with identifying donor information (name and address) redacted.

5.   Copies of your mailing lists used in all general solicitations.

6.   All documents other than those furnished in response to Request numbered 1 above that mention or reflect the original purposes for creating and organizing the Medical College of Georgia Foundation, Inc., including without limitation, any and all archived documents correspondence, memoranda, notes, print media articles, mailings, writing and recordings whatsoever relating to the original creation of the Foundation.

7.   All documents other than those furnished in response to Request numbered 1 above that mention or reflect the original understanding, agreement, permission or license between the original incorporators of the Foundation, or any representative of the Foundation at any point in time, and the Medical College of Georgia, the Board of Regents or any representative of them concerning the Foundation's use of the name "Medical College of Georgia" or "MCG" by the Foundation.

8.   All correspondence, notes and other documents of any type containing inquiries, questions, or comments concerning the Defendant's relationship to the Medical College of Georgia or statements or inquiries concerning that relationship or stating any questions, comments, recommendation, suggestions or confusion as to the relationship between MCG or the Board of Regents with the Foundation as to whom to make a donation subsequent to June 1, 2008.

9.  Copies of all documents, notes, letters, memoranda, and other writings, recordings and notes that provide you with a right or permission to use the Medical College of Georgia name, mark and symbols subsequent to the Foundation's termination as a Cooperative Organization in June, 2008.

10. All correspondence, notes, memoranda and other written documents with third parties concerning the change of the Foundation's name requested by the Board of Regents or the Medical College of Georgia or the representatives of either.  If you claim any privileges in regard to this request, please identify the document for future reference.  Please include in your response any communications with non-attorney advisors, experts and specialists with whom you sought advice or who advised you in regard to the name selection.

11. Please attach a copy of ay document, writing or other communication identified or referred to in Defendant's answers to Plaintiff's interrogatories served herewith, and without limitation, specifically Interrogatory 19.

THURBERT E. BAKER            033887
Attorney General

R. O. LERER                  446962
Deputy Attorney General

DENISE E. WHITING-PACK       558559
Senior Assistant Attorney General

MARY JO VOLKERT              728755
Assistant Attorney General

PATRICK J. RICE              603000
Special Assistant Attorney General

PATRICK J. RICE
Special Assistant Attorney General
HULL, TOWILL, NORMAN, BARRETT & SALLEY, PC
Post Office Box 1564
Augusta, Georgia 30903-1564
(706) 722-4481
Fax: (706) 849-5126

IN THE SUPERIOR COURT OF AUGUSTA-RICHMOND COUNTY
STATE OF GEORGIA

CLERK OF SUPERIOR, STAT
AND ~~~ ~ ~ F COURT
FILED

09 OCT 20 AM 11: 04

~~~ ~~~~SCH. CLERK
~~~~~~ COUNTY, GA.

THE BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA for and
on behalf of THE MEDICAL COLLEGE OF
GEORGIA,

      Plaintiff,

MEDICAL COLLEGE OF GEORGIA
FOUNDATION, INC.,

      Defendant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CIVIL ACTION NO.

2009 · RCCV·1364

**SHERYL B. JOLLY**

## RULE NISI

Plaintiff having filed the above-styled Complaint for Interlocutory and Permanent Injunctive

Relief, and Attorneys' Fees and Expenses of Litigation, let Defendant show cause before this Court, in

Courtroom  1 , in the Augusta-Richmond County Superior, City-County Building, 530 Greene Street,

Augusta, Georgia 30901 on the  17  day of  December , 2009, at  9:00  a.m./~~p.m.~~, why

Plaintiff's petition for interlocutory injunctive relief as to the Defendant's use of the Medical College of

Georgia and MCG names and marks should not be allowed and granted. Plaintiff, also, has requested,

pursuant to O.C.G.A. § 9-11-64(a)(2), that the trial of the action for a permanent injunction as to

Defendant's use of those names and marks be consolidated at that hearing. Subject to any objections to

such consolidation being filed by either party not later than forty (40) days after service of the Complaint

of this Rule Nisi upon Defendant and ruled upon as promptly as possible thereafter, the Court will

consolidate Plaintiff's request for a permanent injunction as to the Foundation's use of the Medical College

of Georgia and MCG names and marks.

The Court further ORDERS that the parties submit briefs and proposed findings of fact not later

than  3  days prior to the hearing date specified above.

The additional requests for further injunctive relief based on alleged breaches of fiduciary duties, for additional injunctive relief related to the fundraising activities of Defendant and as to the accreditation issue and for attorneys' fees and expenses of litigation shall be considered at a subsequent time unless the parties agree to hear all matters at one time and so inform the Court.

SO ORDERED this _20th_ day of _October_, 2009.

_Sheyl B Jolly_
J.S.G.A.J.C.

Prepared by:

MARY JO VOLKERT
Assistant Attorney General
40 Capitol Square
Atlanta, Georgia 30334
Telephone: (404) 656-3343
Fax: (404) 657-3239

PATRICK J. RICE
Special Assistant Attorney General
HULL, TOWILL, NORMAN, BARRETT & SALLEY, PC
Post Office Box 1564
Augusta, Georgia 30903-1564
(706) 722-4481
Fax: (706) 849-5126